**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq.
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

CHIEN-HUI LEE,
*On behalf of herself and others similarly situated*,

      Plaintiff,

          v.

THE FRANKLIN INSTITUTE

      Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

---

      Plaintiff CHIEN-HUI LEE (hereinafter, "Plaintiff LEE" or "Plaintiff"), individually and on behalf of all other persons similarly situated in Pennsylvania and the United States, by her undersigned attorneys, pursuant to this Class Action Complaint against THE FRANKLIN INSITUTE ("Defendant"), alleges the following:

## <u>NATURE OF THE ACTION</u>

      1.    This is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant engaged in through marketing and selling tickets to their *Terracotta Warriors of the First Emperor Exhibit* ("Exhibit") between September 30, 2017 to March 4, 2018. The Defendant sold tickets specifically to the Exhibit online and in their museum kiosks. They also sold accompanying audio equipment and tickets for an IMAX movie

related to the Exhibit. In an effort to market the Exhibit, the Defendant created a website, a free augmented reality mobile application, and a K-12 education guide. A giant banner was hung in front of Defendant's headquarters in the middle of Philadelphia advertising the Exhibit. The banner read "Terracotta Warriors of the First Emperor" and displayed pictures of what appeared to be four authentic terracotta warriors. *See*, **EXHIBIT D**. Defendant created several elaborate posters advertising the Exhibit around Philadelphia. These posters instructed the public that there were authentic terracotta warriors in its Exhibit. Many of these terracotta warriors found on the posters were not found in the Exhibit. *See*, **EXHIBIT E**. Below is a picture of the website that marketed the Exhibit:



2.     The website introduced the Exhibit by stressing the authenticity of the archaeological objects in the Exhibit. It began with the sentences, "Take a journey through one of the most significant archaeological discoveries in history – and explore the enduring mysteries that remain hidden within its depths. In 1974, a farmer in China was digging a well when he struck upon fragments of terracotta. Unbeknownst to him, the farmer had uncovered one of the

most monumental achievements in human history." It later continues, "Now, these warriors –

symbols of the astounding achievements of mankind and the incredible history of the human race

– come to The Franklin Institute for the only east coast engagement of a two-city tour." Nothing

on the website indicated that the Exhibit would contain replicas of historical artifacts+. *See*,

**EXHIBIT A**.

3.        The K-12 education guide that was linked to the Exhibit website stated that the

"objects on display [were] priceless artifacts never before seen in Philadelphia." *See*, **EXHIBIT

B**.

4.        Defendant included the following images on its website. Plaintiff's counsel has

discovered, through its own investigation that the statues in the largest image were not authentic

historical artifacts but were replicas. Nothing on the Exhibit website indicated to the viewer that

they were replicas. *See also*, **EXHIBIT B**.



5.        The term "terracotta warriors" refers to a collection of life-sized terracotta

sculptures found in 1979 in Xi-An China. These sculptures were created around 210 BCE to

guard the tomb of an emperor of China, Qin Shi Huang. Below is a picture of some terracotta warriors:



6.      Through Plaintiff counsel's investigations, Plaintiff counsel discovered that more than half of the life-sized sculptures in the Exhibit were replicas of the terracotta sculptures found in Xi-An China and not the original sculptures found in the tomb of the ancient Chinese emperor, Qin Shi Huang.

7.      There were two portions of the Exhibit. The first portion of the Exhibit showcased ten authentic life-sized terracotta statues. In the second portion of the Exhibit, there were fourteen or more life-sized statues resembling terracotta warriors that were replicas. None were

marked as replicas. In fact, the Defendant had created a misleading banner which was placed in front of these replicas which suggested that theses statues were originals. The banner asked the question, "CAN YOU IMAGINE BEING IN THE ORIGINAL CHAMBERS?" It instructed the Exhibit attendee to "step back in time and walk among the Terracotta Army."



8.     Many posters were displayed around Philadelphia, in locations such as the University of Pennsylvania, advertising the Exhibit. These posters only presented that authentic terracotta warriors were part of the Exhibit and did not indicate to the viewer that more than half

would be replicas. Many of these posters contained images of terracotta warriors which were not found in the Exhibit. *See*, **EXHIBIT F**.

9.       The statues in the Exhibit were not marked to indicate whether they were authentic terracotta warriors imported from Xi-An China or whether they were replicas. Defendant, by failing to accurately mark the statues, misled unsophisticated consumers into believing that all the statues they were observing were authentic, when in reality, more than half of the statues were replicas.

10.       Plaintiff relied on the advertising posters and the webpages designed by Defendant and believed that all of the terracotta soldiers in the Exhibit were authentic. In fact, all other reasonable consumers would believe that all of the terracotta soldiers on display would be authentic, not replicas.

11.       By marketing the Exhibit as an exhibit with authentic terracotta warriors, when it was an exhibit largely of replicas of the terracotta warriors, and by showcasing statues in its marketing materials which were either not in the Exhibit or which were replicas of the terracotta warriors from China, the Defendant misled consumers about nature of the experience of surveying the Exhibit. The Defendant stressed authenticity in its marketing materials. The Defendant claimed that "symbols of the astounding achievements of mankind and the incredible history of mankind [came] to The Franklin Institute," on its website. It claimed that the "objects on display [were] priceless artifacts" on its K-12 education guide linked on its website. It claimed on numerous posters and banners that it was displaying Terracotta Warriors in the Exhibit. Defendant indicated to consumers that they would be entering an Exhibit where all of the life-sized sculptures were originals rather than replicas. Instead, customers found themselves surveying an Exhibit where more than half of the sculptures were replicas. Furthermore,

Defendants misled customers who attended the Exhibit into believing that the replicas inside the Exhibit were authentic by failing to label which statues were replicas, denying customers the ability to properly discern and observe the actual authentic terracotta warrior sculptures.

12.     Defendant has deceived Plaintiff and other consumers by inducing Plaintiff and Class members to reasonably rely on Defendant's misrepresentations and purchase tickets to the Exhibit which Plaintiff and Class members would not have purchased at the given price had they known the truth. Through these unfair and deceptive practices, Defendant has collected substantial profits from the sale of tickets to its Exhibit that it would not have otherwise earned.

13.     Plaintiff is among the victims of Defendant's fraud and brings this action on behalf of themselves and all other similarly situated consumers who, from the applicable limitations period up to and including the present (the "Class Period"), purchased tickets to the Exhibit in the United States ("the Class").  Plaintiff seeks to obtain redress for those who have been economically harmed by purchasing the tickets to the Exhibit, the accompanying audio guides, and tickets to the accompanying IMAX movie.

14.     Plaintiff expressly does not seek to enforce any state law that has requirements beyond those established by federal laws or regulations.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

16.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because Defendant is headquartered in Pennsylvania and because its principal place of business is in Pennsylvania.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

18.     Plaintiff LEE visited The Franklin Institute in Philadelphia, PA to view the Exhibit for Terracotta Warriors. The Plaintiff had seen several posters advertising the Exhibit at different locations in Philadelphia. The Plaintiff also had the banner advertising the Exhibit that hung in front of Defendant's headquarters. These posters and banner read, "Terracotta Warriors of the First Emperor," and had images of what appeared to be authentic terracotta warriors. The Plaintiff also visited the Exhibit website and read the K-12 education guide. On account of the representations made on the banner, website, and posters – that the Exhibit was purely an exhibit featuring actual historical artifacts from tomb of China's first emperor like the ones shown on the banner, posters, and website and that she would be able to trust that the statues she saw were historical artifacts – Plaintiff had purchased tickets to the Exhibit, a mobile guide to the Exhibit, and tickets to an IMAX showing on February 2018. Upon surveying the Exhibit, Plaintiff found that none of the life-sized statues looked authentic. Afterwards, the Plaintiff asked a guard at the Exhibit if the statues in the Exhibit were authentic. The guard at the Exhibit stated to Plaintiff

that none of the statues in the Exhibit were authentic and that all of the statues in the Exhibit were replicas.

*Defendant*

19.     Defendant THE FRANKLIN INSTITUTE is a corporation organized under the laws of New York with its headquarters at The Benjamin Franklin Parkway and 20th Street, Philadelphia, PA 19103. Defendant sells tickets to its exhibitions to customers nationwide. Defendant's address for service of process is The Benjamin Franklin Parkway and 20th Street, Philadelphia, PA 19103.

20.     The advertising for the Exhibit, relied upon by Plaintiff, were prepared, approved, and disseminated by Defendant and its agents. Such advertising, containing the misrepresentations alleged herein, were designed to encourage consumers to purchase the tickets to the Exhibit and misled reasonable consumers, including Plaintiff and the Class, into purchasing tickets to the Exhibit. Defendant hosted the Exhibit and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive advertising for the Exhibit.

## FACTUAL ALLEGATIONS

### The Defendant Marketed and Represented the Exhibit as a Presentation of Ancient Terracotta Warriors from China

21.     The Defendant marketed the Exhibit as a presentation of ancient terracotta warriors from China. The name of the Exhibit was *Terracotta Warriors of the First Emperor*. Blazoned on the top of the Exhibit's website, used to sell tickets to the Exhibit, was a photo of a statue resembling the famous life-sized terracotta statues found in Xi-An China; on the bottom of the same website was a photo of eleven similar statues. The Exhibit's website stated that "life-sized statues, constructed over 2000 years ago…come to the Franklin Institute for the only east coast engagement of a two-city exhibit tour." *See*, **EXHIBIT A**. The K-12 education guide that

was linked to in the Exhibit's website stated that "the objects on display are priceless artifacts never before seen in Philadelphia." *See*, **EXHIBIT B.**  In addition, a larger banner was placed in front of the Defendant's headquarters. This banner had photos of four statues that resemble the famous terracotta statues found in Xi-An China. The banner read, "Terracotta Warriors of the First Emperor;" it stressed the authenticity of statues displayed the Exhibit by indicating that that they belonged to the first emperor of China. The banner did not acknowledge that most of the life-sized statues in the Exhibit were replicas. *See also*, **EXHIBIT D**.



22.     Numerous posters could have been found inside the Defendant's headquarters and around Philadelphia, advertising the Exhibit. These posters did not indicate that most of the life-sized statues in the Exhibit were replicas. Some of these posters, like the posters displayed below, contained images of terracotta warriors which are squarely not found in the Exhibit. *See also* **EXHIBIT F**.





23.     The images shown on the website, on the banner that was in front of the Defendant's headquarters, and the K-12 education guide, the description on the Exhibit website and posters located throughout Philadelphia demonstrate that the Defendant led the consumer to believe that they were entering an Exhibit where the entire Exhibit was comprised of authentic life-sized terracotta warriors from China, and not replicas. These advertisements also misled the consumer into believing that there were certain statues in the Exhibit that were simply not there.

**Most of the Life-Sized Statues in the Exhibit were not the Originals Terracotta Warriors from Xi-an China but were Rather Replicas**

24.     Plaintiff's counsel has investigated and found that most of the life-sized "terracotta warriors" inside the Exhibit were not the original terracotta warriors from Xi-An China. Instead, most of the life-sized statues inside of the Exhibit were replicas of the terracotta warriors found in Xi-An China. In fact, the news outlet, philly.com, also stated that dozens of

12

statues in the Exhibit were replicas.[1] *See also*, **EXHIBIT C**. Below is a picture of some of the replicas in the Exhibit, found as part of Plaintiff counsel's investigations. These life-sized statues were not marked as replicas. *See also*, **EXHIBIT E**.



25.    In front of a room, in the second portion of the Exhibit, containing many of these replicas was a banner asked Exhibit attendees, "CAN YOU IMAGINE BEING IN THE

---

[1] http://www.philly.com/philly/entertainment/terracotta-warriors-franklin-institute-exhibit-philly-20170927.html ; Accessed 2/16/18

ORIGINAL CHAMBERS?" The banner instructed Exhibit attendees to "step back in time and walk among the Terracotta Army." This banner was utterly misleading. It misled Exhibit attendees into believing that the life-sized statues past the banner were all originals when, in fact, all the life-sized statues that appear after this banner were replicas. No label indicated to the museum attendee that the life-sized statues that appeared in the room after the banner were, in fact, replicas.

26.     There were more than sixteen life-sized statues in the Exhibit that were replicas. At most, there were ten authentic terracotta warriors. Thus, most of life-sized sculptures in the Exhibit were replicas which were not labeled as replicas.  *See* also, **EXHIBIT A**.

**Plaintiff Relied on Defendant's Representations that the Terracotta Warriors in the Exhibit were Authentic**

27.     The Plaintiff saw several posters advertising the Exhibit at multiple locations in Philadelphia. The Plaintiff also saw the giant banner advertising the Exhibit that hung on Defendant's headquarters. These posters and banner read, "Terracotta Warriors of the First Emperor," and had images of what appeared to be authentic terracotta warriors. Before attending the Exhibit, Plaintiff also went onto the Exhibit website.  In reliance of the of the representations made on the banner, website, and posters – that there would be authentic terracotta warriors in the Exhibit including the ones on the banner, website, and posters and that she would be able to trust that the statues she saw were historical artifacts – she purchased tickets to the Exhibit, a mobile guide to the Exhibit, and tickets to an IMAX showing on February 15, 2018. Upon traversing the entirety of the Exhibit, she felt as if none of the statues in the Exhibit appeared to be authentic. Many of the statues in the Exhibit were not labeled as replicas. She asked a security guard if any of the statues in the Exhibit were authentic. The security guard replied that none of the statues in the Exhibit were authentic and that every statue was a replica. While in the Exhibit,

Plaintiff found herself unable to accurately discern which life-sized statues in the Exhibit were authentic and which were replicas or whether there were any authentic terracotta warriors in the Exhibit at all.

**The Defendant did not Adequately Label Which Statues were Authentic and Which were Replicas**

28. The Defendant did not label which statues in the Exhibit were authentic terracotta warriors and which statues in the Exhibit were replicas. Thus, Defendant misled Plaintiff and Class into believing that all of the statues in the Exhibit would be all authentic when most of the life-sized statues were replicas.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Conduct**

29. The Plaintiff and Class members reasonably relied on the Defendant's misrepresentations when purchasing a ticket to the Exhibit and believed that that they were purchasing tickets to see an historical Exhibit where all the statues were authentic historical artifacts. Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they were misled to believe that all life-sized terracotta warriors in the Exhibit were authentic when most of them were replicas. Even if there were some life-sized terracotta warriors in the Exhibit which were authentic, Plaintiff and Class were not buying a product but rather the experience of entering an historical exhibit; the experience of entering an exhibit where most of the statues are replicas is markedly different from the experience of entering an exhibit where all of the statues are authentic historical artifacts. Through its marketing, the Defendant represented that the Exhibit would provide the latter experience. The Plaintiff and Class' injury was further exacerbated by the fact that the replicas in the Exhibit were not labeled as replicas, meaning that Plaintiff and Class were unable to properly discern, locate, and observe

the actual authentic terracotta warriors in the Exhibit. Thus, Plaintiff and the Class were deprived of the benefit of their bargain.

30.     In order for the Plaintiff and Class to be made whole, they must be compensated for the full price of the ticket they paid to enter the Exhibit, for the price of the accompanying audio for the Exhibit, and for ticket to the accompanying IMAX movie. But for the Defendant's misrepresentations, the Plaintiff and Class would not have purchased the tickets to enter the Exhibit, nor the accompanying audio, nor the ticket for the IMAX movie.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff LEE brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who bought tickets to the Exhibit, the accompanying audio for the Exhibit, and tickets for the accompanying IMAX movie during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

32.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

33.     Class members are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by

mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

34.     Plaintiff's claims are typical of the claims of other Class members as they all are similarly affected by Defendant's wrongful conduct.

35.     Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

36.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

37.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

     i.  Whether Defendant marketed, advertised and/or sold the tickets for the Exhibit to Plaintiff and Class members using in a false, misleading and/or deceptive manner;

    ii.  Whether Defendant omitted and/or misrepresented material facts in connection with the sale of the tickets to the Exhibit;

   iii.  Whether Defendant's marketing, advertising and/or selling of tickets to the Exhibit constituted an unfair, unlawful or fraudulent practice;

    iv.  Whether the statues displayed in the Exhibit were authentic terracotta warriors or replicas

    v.   Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

    vi.   Whether Defendant purposely misrepresented the Exhibit so that Plaintiff and Class members would purchase tickets to the Exhibit;

    vii.   The appropriate measure of damages and/or other relief.

38.    The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

40.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

41.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

42.     The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

43.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 Penn. Stat. Ann.§ 201-1, *et seq.*)**

***(Brought Individually and on behalf of the Pennsylvania Subclass of the Nationwide Class; Alternatively, brought Individually and on behalf of the Pennsylvania Class.)***

44.     Plaintiff LEE realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

45.     Plaintiff LEE brings this claim individually and on behalf of the other members of the Class for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann.§ 201-1, *et seq.* (the "UTPCPL").

46.     Plaintiffs and Class members are consumers who purchased the tickets to exhibit for personal, family or household purposes.

47.     The UTPCPL prohibits "'Unfair methods of competition' and 'unfair or deceptive acts or practices.'" 73 Penn. Stat. Ann.§ 201-2. Specifically, the UTPCPL prohibits:

"Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have," 73 Penn. Stat. Ann.§ 201-2(v), "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," and 73 Penn. Stat. Ann.§ 201-2(viii) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," 73 Penn. Stat. Ann.§ 201-2(xxi).

48.     Defendants violate the UTPCPL by misleading consumers into believing that most of the statues in the exhibit were historical artifacts. Defendants' entire advertising and marketing effort is designed to mislead reasonable consumers such as CHIEN-HUI LEE into purchasing tickets to the Exhibit. If not for Defendants' false advertisements, consumers would not have paid as much for tickets to the Exhibit, or they would not have purchased them at all.

49.     Consumers in Pennsylvania have been injured in their business and property by Defendants' unfair and deceptive practices. In accordance with 73 Penn. Stat. Ann.§ 201-9.2, Plaintiffs and are entitled to recover actual damages, treble damages, punitive damages, injunctive relief, equitable and declaratory relief, other appropriate damages, and attorneys' fees and costs.

## COUNT II

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

50.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

51.     Through its marketing and advertising, Defendant intentionally made materially false and misleading representations that the sculptures in the Exhibit were authentic and not replicas.

52.     Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Exhibit at the time they purchased tickets.

53.     Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

54.     Had Plaintiff and the Class known that the Exhibit contained mostly replicas of terracotta warriors, and that these replicas would not be labeled as replicas, they would not have purchased tickets to the Exhibit.

55.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

56.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund compensating them for the ticket they purchased.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the Pennsylvania Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  An order (i) enjoining Defendant from continuing to misrepresent and conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all members of the Class in an amount up to the purchase price of the ticket to the Exhibit, of the accompanying audio equipment, and of the ticket to the accompanying IMAX movie.

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: 3.20.2018

Respectfully submitted,

/s/ *C.K. Lee*_____

By:  C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq.
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*